Filed 12/23/25  P. v. Hernandez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E085731 |
| v. | (Super.Ct.No. SWF2400673) |
| ELVIS FRANKAVILA HERNANDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Stephen J. Gallon, Judge. Affirmed.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted Elvis Frankavila Hernandez of oral copulation of an unconscious person (Pen Code, § 287, subd. (f); unlabeled statutory citations are to this code), and the trial court sentenced him to six years in state prison.  Hernandez appealed, and we

1

appointed counsel to represent him. Counsel filed an opening brief that raised no issues and requested an independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738. We affirm.

BACKGROUND

In May 2024, the People filed an information alleging that Hernandez committed oral copulation of an unconscious person in violation of subdivision (f) of section 287. The People further alleged that the victim was particularly vulnerable within the meaning of California Rules of Court, rule 4.421(a)(3).

At trial, the victim testified that she began dating Hernandez in 2019, and she began dating J.R. in early "2020 or maybe [the] end of 2019," while she was still seeing Hernandez. Neither Hernandez nor J.R. knew that she was dating both of them.

On April 10, 2020, the victim drove to Hernandez's house with her 18-month-old son, and they went with Hernandez to his brother and sister-in-law's home, where the adults played games and drank alcohol. The victim had two drinks, and she felt intoxicated.

At about 12:00 a.m., the victim fell asleep on the living room couch with her son sleeping on her chest. At "1:00 or 2:00 in the morning," she woke up to something "hot" on her face, and her eyes were burning. The victim saw Hernandez standing over her "with his penis in his hands." She thought that he had ejaculated onto her face. She wiped her face with her jacket, "jump[ed] up," and asked what he was doing to her. He told her that she had "asked for it, that he could do what he wanted to [her] and that this

2

is what [she] wanted.  He said that he had gone through [her] phone and he saw what a little slut [she] was so he wanted to do that to [her] because it's what [she] wanted."  She was "angry," "shocked," "hurt," "embarrassed," and "humiliated."  She "was scared [be]cause [she] thought he was [going to] do something further to hurt [her]."  She "would never give him permission to do that to [her]."

The victim ran to Hernandez's brother's room and knocked on the door to try to get someone to help her, but no one came out.  She then went "back into the living room," "called an Uber," and "eventually was able to make it back to [her] car."  She drove to her sister's house, and when she woke up, she took a shower and cried.  Her sister checked on her and asked her what happened.  The victim told her, and her sister "urged [her] to call the police."

Later that morning, the victim received text messages from J.R.  J.R. was angry, and he told her that "he had received some messages from [her] phone, that [she] apparently texted him in the middle of the night, pictures of [her] with [a] penis in [her] mouth.  And he asked [her] what was going on with those."  She said that she "didn't know what he was talking about."  Then she "confessed to him that, yes, [she] had been at a party with someone the night before but that [she] wasn't—[she] didn't do anything like that."  J.R. then sent her the pictures that he had received.  She checked the deleted messages on her phone and found that several photos and a video had been sent to J.R.  One of the pictures showed the victim's face, Hernandez's penis, and her son's arm across her face.  Another picture showed Hernandez's penis in her mouth and her "son's arm at

3

the bottom of [her] chin." A third picture showed the victim's face, her son's arm across her chest, and Hernandez's hand "holding his penis above [her] face. And you can see ejaculate on [her] face here."

Later that evening, the victim called law enforcement. She told a sheriff's deputy what happened, and the deputy asked if she would call Hernandez. She agreed, and she asked Hernandez "why he did that to [her]." Hernandez said that he did not know what she was talking about.

At the sheriff's station, the victim agreed to undergo a sexual assault exam. The exam included taking swabs of "[her] face, [her] hair, and [her] mouth, and [her] genital area."

A week later, the victim "noticed that [her] banking app was gone off [her] phone." She "re-downloaded" the app, and she discovered that she "was missing a lot of money from [her] account." She "saw two transactions from Zelle for $700 and $400" sent to Hernandez on April 11, 2020. She had not given Hernandez permission to make those transactions.

The victim also testified that in January or February 2020, she spent the night at Hernandez's home, and she woke up to find him having sex with her. She pretended to be asleep, and she did not confront him about it. She testified that she did not consent to having sex with him, and she did not tell anyone about the incident.

Riverside County Sheriff's Deputy Ivan Sanchez testified that he contacted Hernandez and asked about the victim, and Hernandez said that they had a "bad

4

breakup." Sanchez asked about the transactions from the victim's phone, and Hernandez said that he had "no comment." About one and one-half weeks later, Sanchez contacted Hernandez again. Sanchez said that Hernandez was "uncooperative."

Sanchez testified that "there [was] a delay in this case based on something happening elsewhere," and "[t]hat took priority." After this case "[came] back to" him in 2023, he obtained and executed a warrant for a sample of Hernandez's DNA.

San Bernardino County Sheriff's Department criminalist Jennifer Steele tested Hernandez's DNA and compared it to the samples from the victim's sexual assault exam. She testified that the swab from the right side of the victim's face was positive for semen from a single source. Steele further testified that the "sperm fraction" identified on the victim's face was "at least 49 septillion times more likely if Elvis Hernandez [was] the contributor than if an unrelated, unknown individual [was] the contributor." Steele acknowledged that there could have been other ways that Hernandez's DNA could have transferred to the victim's face.

The defense called only one witness, a woman who has been Hernandez's friend for over 20 years. She testified that about six years earlier, she drank too much alcohol while she was with Hernandez, and she "tried to push through something with him. But he was just, like, no, no, no, no, no, it's okay, we['re] only friends, and that was it." She also testified that on other occasions when she was intoxicated around Hernandez, he was "very respectful," and he never tried to do anything to her. She was never uncomfortable

around Hernandez. She admitted that she did not know what Hernandez was charged with, and she does not approve of "sexual offense[s] against a sleeping woman."

Defense counsel argued that there were "lot of holes in that little tale she told [the jury] because they are false because that is not what really happened." Counsel further argued that law enforcement conducted "a half-assed investigation" and that there was "plenty of doubt" in this case.

The jury found Hernandez guilty of oral copulation of an unconscious person. (§ 287, subd. (f).) The court found that the alleged aggravating factor was not true. The court sentenced Hernandez to the middle term of six years in state prison, and it awarded him 46 days of actual custody credit and 46 days of conduct credit for a total of 92 days of presentence custody credit.

## DISCUSSION

Hernandez's appellate counsel filed a *Wende* brief identifying two potentially arguable issues: (1) "[w]hether the court prejudicially erred by not allowing the details of [the victim's] relationship with James, including details in text messages [Hernandez] may have found in [the victim's] phone"; and (2) "[w]hether the prosecutor improperly vouched for the law enforcement during closing, prejudicing [Hernandez]." Counsel asked that we conduct an independent review of the record. We advised Hernandez that he had 30 days to file a personal supplemental brief, and we received no response.

6

We have independently reviewed the record and found no arguable error that would result in a disposition more favorable to Hernandez.  (*Wende*, *supra*, 25 Cal.3d at pp. 441-442.)  Accordingly, we affirm the judgment.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ_____
J.

We concur:

McKINSTER_____
       Acting P. J.

CODRINGTON_____
       J.